OPINION
Defendant-appellant Rick R. Jennings appeals his convictions and sentences entered by the Lancaster Municipal Court on one count of obstructing official business and one count of criminal damaging/endangering following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 20, 1998, the Fairfield County Sheriff's Office filed two affidavits in the Lancaster Municipal Court, charging appellant with obstructing official business, in violation of R.C.2921.31(A); and criminal damaging/endangering, in violation of R.C.2909.06(A). The charges arose after appellant, his girlfriend, Sonya Johnson, and her son were taken into custody on July 18, 1998, for investigation of a suspected theft. Appellant appeared in the Lancaster Municipal Court and entered a plea of not guilty to the charges. Appellant waived his right to a speedy trial on August 13, 1998. On June 2, 1999, appellant filed a Motion for Discovery and a Motion for Notice of Intention to Use Evidence. Subsequently, on June 22, 1999, appellant filed a Motion to Compel Disclosure of Evidence, moving the trial court to issue an order directing the State to provide defense counsel with all potentially exculpatory evidence. Via Journal Entry filed June 25, 1999, the trial court overruled appellant's motion to compel. After appellant served his term of incarceration on the underlying theft charge, the matter proceeded to trial before a jury on August 17, 1999. On the morning of trial, the State filed a Motion In Limine, requesting the trial court exclude evidence of "any events occurring after the incidences leading to [appellant's] arrest for obstructing official business and criminal damaging" as well as "any evidence of [appellant's] physical injury and/or deputies alleged use of excessive force." At trial, Deputy Matthew Smith of the Fairfield County Sheriff's Office testified he was on routine patrol during the late evening hours of July 17, 1998, when he observed a vehicle run a red light. Deputy Smith initiated a traffic stop. The driver, who was later identified as appellant, stopped the vehicle, exited, and approached Deputy Smith's cruiser. The deputy ordered appellant back into his vehicle. After appellant returned to his vehicle, Deputy Smith approached the driver's window and asked appellant for his driver's license. The deputy noticed several boxed tents in the back seat of the vehicle. When the officer inquired about the items, appellant informed the officer his mother or grandmother had purchased the merchandise for him. Deputy Smith obtained the phone number of the woman and called to verify appellant's statement. Upon making the telephone call, the deputy learned appellant had given him false information. When confronted, appellant confessed to taking the boxed tents and other items from Quality Farm and Fleet. Deputy Smith called for backup and placed appellant under arrest. Thereafter, Deputy Smith handcuffed appellant and placed him in the back of the cruiser. The deputy transported appellant, Johnson, and her son to the Fairfield County Jail. Lieutenant David Peck of the Fairfield County Sheriff's Office testified he was supervising the midnight shift at the Fairfield County Jail on July 18, 1998, when Deputy Smith brought appellant, Johnson, and her son into the facility. Jail personnel placed appellant and Johnson in separate holding cells. When appellant was brought out of his holding cell for processing, he was volatile and uncooperative. Lt. Peck recalled appellant was concerned about getting Johnson released as well as obtaining a recognizance bond for himself. When Lt. Peck explained such a bond was not possible on a felony charge without a bond recommendation from the State or approval from the trial court, appellant became very upset. Appellant refused to answer questions during booking. Despite repeated instructions to remain seated, appellant kept standing up. At one point, appellant walked towards the door and the deputies had to struggle with him to return him to his seat. Appellant shouted, "I'm sorry, Sonya. I love you, Sonya." Appellant continued to shout for three to five minutes. Appellant became enraged, flailing his hands and turning toward Johnson's holding cell. Deputy Allen, one of the deputies on duty that morning, and Lt. Peck struggled with appellant and finally returned him to his chair. As Lt. Peck tried to seat appellant, appellant attempted to bite the officer. A second struggled soon ensued, which required four deputies to restrain appellant. Appellant thrashed his head, arms, and legs. The deputies held him on the ground and tried to calm him. The deputies returned appellant to the booking chair where he remained still for approximately five to ten minutes, however, his fists were clenched and his muscles tensed. The deputies decided to return appellant to his holding cell. Appellant freed himself and ran toward Johnson's cell. A third struggled ensued. When the deputies brought appellant to the ground, appellant made a fist with both hands and punched the vent located on the outside wall of Johnson's holding cell. Appellant tried to pull the vent out of the wall, not only damaging the vent, but also the surrounding drywall. Throughout this encounter, appellant threatened to kill the deputies and cursed at them. This struggled lasted approximately ten minutes, after which the deputies picked up appellant and escorted him to the booking room. In the booking room, appellant remained disruptive and uncooperative. Although the deputies had to physically restrain him, they were able to photograph appellant prior to returning him to his holding cell. The deputies were unable to obtain appellant's fingerprints at this time. Once in the holding cell, appellant began to bang his head against the wall. Lt. Peck observed appellant bang his head three to five times. Deputy Janna Brown, also with the Fairfield County Sheriff's Office, corroborated Lt. Peck's testimony relative to appellant's behavior and the deputies' actions in response. Deputy Brown also noted appellant was slamming his head so hard against the holding cell walls, two rooms shook. Detective John Rice testified he conducted an interview of appellant prior to the deputies' attempting the book-in procedure. Det. Rice described appellant as cooperative, but quite concerned about Johnson. On cross-examination, Det. Rice acknowledged appellant did not provide him with truthful answers during the interview and conceded such could be construed as uncooperative behavior. Appellant testified on his own behalf. Appellant explained he, his girlfriend, and her son were traveling on Route 33 in Lancaster, Ohio, on the evening of July 17, 1998, when he pulled into the parking lot of Quality Farm and Fleet. Appellant observed a grocery cart filled with tents and garden statues. Appellant acknowledged he placed the merchandise in his vehicle and continued his journey down Route 33. After traveling approximately 1 to 2 miles, appellant was stopped for running a red light. Appellant testified he was ultimately handcuffed, placed under arrest, and transported to the Fairfield County Jail. Appellant recalled, once at the jail, he was shackled and remained handcuffed. He was interviewed by Det. Rice at the Detective Bureau located across the street from the jail. After the interview, Det. Rice returned appellant to the jail where he was placed in a holding cell. Lt. Peck arrived at the cell to bring appellant to the booking area. Appellant stated as he exited the cell, he noticed the door to Johnson's holding cell was open. Appellant walked toward Johnson's cell to apologize and express his love for her. Appellant admitted although Lt. Peck instructed him to move along, he continued to profess his love to Johnson. Appellant told Johnson he loved her four times, after which Lt. Peck yelled at him. The lieutenant placed his hand on the front of appellant's throat. Appellant testified Lt. Peck moved his foot, causing appellant to fall to the ground flat on his face. Appellant stated as he was lying on the ground, Lt. Peck had his hand on appellant's throat, pushing him down. Appellant then felt three or four people holding his arms and legs. Appellant recalled his head repeatedly being pushed into the vent, which caused an indentation in the vent. As a result, appellant sustained injuries to his ear. The deputies then picked up appellant and carried him into the booking room where he was photographed. On cross-examination, appellant admitted he lied to Det. Rice regarding the stolen property from Quality Farm and Fleet. Additionally, appellant acknowledged the photograph taken of him during the booking procedure does not reveal any blood on his face, but rationalized the color red would not appear in a black and white photograph. Appellant maintained he did not bang his head on the holding cell wall before or after the photograph was taken. After hearing all the evidence and deliberations, the jury found appellant guilty of obstructing official business and criminal damaging/endangering. The trial court sentenced appellant to two consecutive ninety day terms of incarceration in the Fairfield County Jail on the charges. The trial court suspended the sentences and placed appellant on two years probation with intensive supervision. The trial court memorialized the convictions and sentences in Journal Entries filed August 20, 1999. It is from these convictions and sentence appellant prosecutes this appeal, raising the following assignments of error:
 I. THE TRIAL COURT COMMITTED ERROR WHEN IT OVERRULED THE DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF EXCULPATORY EVIDENCE.
 II. THE TRIAL COURT ERRED WHEN IT DID NOT PERMIT THE DEFENDANT TO ADMIT POTENTIALLY EXCULPATORY EVIDENCE THAT WOULD HAVE DEMONSTRATED THAT HE WAS NOT GUILTY OF CRIMINAL DAMAGING OR OF OBSTRUCTION OF OFFICIAL BUSINESS.
 III. THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE OF OHIO'S MOTION IN LIMINE PROHIBITING THE DEFENDANT FROM ADMITTING EVIDENCE OF HIS INJURIES THAT WOULD DEMONSTRATE THAT THE DEFENDANT HAD NOT COMMITTED THE CHARGED OFFENSES THEREBY DENYING THE DEFENDANT HIS SIXTH AMENDMENT RIGHT TO CONFRONT ADVERSE WITNESS.
 IV. THE EVIDENCE WAS SUCH THAT REASONABLE MINDS COULD NOT CONCLUDE THAT EITHER CHARGED OFFENSE HAD BEEN PROVEN BEYOND A REASONABLE DOUBT THUS THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant maintains the trial court erred in overruling his motion to compel the disclosure of exculpatory evidence. Appellant asserts the State failed to disclose the results of Det. Dennis Carley's investigation relative to the treatment of appellant while in the custody of the Fairfield County Sheriff's Office. In Brady v. Maryland, the United States Supreme Court stated: We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87, 83 S.Ct. at 1196-1197,10 L.Ed.2d at 218.
In order to establish a Brady violation, appellant must demonstrate three elements: first, the prosecution failed to disclose evidence upon request; second, the evidence was favorable to the defense; and third, the evidence was material. See, Moore v. Illinois (1972), 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706.
Assuming, arguendo, the State failed to disclose evidence, the record herein does not demonstrate such evidence was favorable to appellant. Without some record demonstration of this element, we are left to speculate whether the evidence complained of would be exculpatory to appellant; therefore, we cannot find a Brady violation nor can we find the trial court erred in overruling his motion to compel. Appellant's first assignment of error is overruled.
 II, III
Because appellant's second and third assignments of error are interrelated, we shall address said assignments together. In his second assignment of error, appellant contends the trial court erred in prohibiting him from introducing potentially exculpatory evidence. In his third assignment of error, appellant submits the trial court erred in granting the State's motion in limine. Appellant explains his ability to demonstrate the reasonableness of his reactions was undermined because the State filed its motion knowing the defense would focus on the wrongdoing of the Fairfield County Sheriff's Office. A pretrial ruling on a motion in limine is a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. State v. Grubb (1986), 28 Ohio St.3d 199, 201-202. A court's initial ruling on a motion in limine does not preserve any error for review. State v. Hill (1996), 75 Ohio St.3d 195, 202-203. In order to preserve the error for appeal, the evidence at issue must be presented at trial, and a proper proffer made. State v. Grubb, supra, at 201. Despite the adverse ruling, appellant was not relieved of the duty of presenting the evidence at trial, and making a proper proffer. Appellant did not do so. Having failed to preserve the record for this Court's review, appellant has waived his right to raise those issues on appeal. Appellant's second and third assignments of error are overruled.
 IV
Herein, appellant raises a manifest weight of the evidence claim. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Appellant argues, "[t]here is absolutely no evidence that [he] intentionally damaged the furnace vent except the testimony of the personnel who assaulted [him] while he was shackled and unable to defend himself." Brief of Appellant at 11. Appellant asserts reasonable minds could not conclude he committed either of the offenses for which he was convicted. At trial, several deputies testified regarding appellant's behavior during the booking procedure. The record reveals appellant was not cooperative and hostile throughout the process. The deputies recounted appellant's repeated defiance and insolence. Not only did appellant refuse to be fingerprinted, but also his behavior required three deputies to physically restrain him in order to obtain his photographs. Based upon the facts noted supra, and the entire record, we do not find the jury's verdict was against the manifest weight of the evidence. The jury was free to accept or reject any or all of the testimony of the witnesses and access the credibility of those witnesses. Lt. Peck's testimony alone was sufficient to support the convictions. The other deputies testified similarly. We do not disagree with the jury's resolution of the evidence.
Appellant's fourth assignment of error is overruled.
The convictions and sentences of the Lancaster Municipal Court are affirmed.
GWIN, P.J. and FARMER, J. CONCUR.